133 F.3d 929
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stacey Rena CANDLER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rasheen Demon FAIRLY, Defendant-Appellant.
 Nos. 96-10537, 96-10570.
 United States Court of Appeals, Ninth Circuit.
 Submitted:** Dec. 8, 1997.
Decided Jan. 8, 1998.
 
 Before: BROWNING, PREGERSON, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In a consolidated appeal, Appellant Rasheen Demon Fairly ("Fairly") and Appellant Stacey Rena Candler ("Candler") appeal from their convictions for conspiracy to possesses and possession of cocaine base with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 846. Fairly also appeals from his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Because the parties are familiar with the facts, we will not recite them here except as necessary.
 
 
 3
 We affirm the district court's denial of Appellants' motion for a new trial for the following reasons.
 
 
 4
 1. Denial of a motion for a new trial based on alleged prosecutorial misconduct is reviewed for an abuse of discretion. See United States v. Sayetsitty, 107 F.3d 1405, 1408 (9th Cir.1997). A defendant carries a significant burden to show that the district court abused its discretion in denying the motion for a new trial. See United States v. Endicott, 869 F.2d 452, 454 (9th Cir.1989). The district court's evidentiary rulings during trial are reviewed for an abuse of discretion. See United States v. Manning, 56 F.3d 1188, 1196 (9th Cir.1995). Improperly admitted evidence mandates reversal, unless the reviewing court is fairly assured that the error did not influence the verdict. See United States v. Brooke, 4 F.3d 1480, 1488 (9th Cir.1993).
 
 
 5
 2. When a defendant records a timely objection at trial, we review for harmless error. See United States v. Valle-Valdez, 554 F.2d 911, 914 (9th Cir.1977). If the error is of constitutional magnitude, it can be disregarded only if it is harmless beyond reasonable doubt. See Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). If the error is not of constitutional magnitude, the government must show only that the prejudice resulting from the error was more probably than not harmless. See United States v. Morales, 108 F.3d 1031, 1040 (9th Cir.1997) (en banc). When a defendant raises an issue on appeal that was not raised before the district court, however, we review for plain error. See Fed.R.Crim.P. 52(b); United States v. Olano, 507 U.S. 725, 732 (1993). Plain error constitutes (1) "error," (2) that is "plain," and (3) that "affects substantial rights." See Johnson v. United States, 117 S.Ct. 1544, 1548-49 (1997) (citing Olano, 507 U.S. at 732). If all three conditions are met, a reviewing court may exercise its discretion to consider a forfeited error, but only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.
 
 
 6
 3. Fairly argues that the district court erred in denying his motion for a new trial based on prosecutorial misconduct and by excluding a taped statement by co-defendant Candler. Candler argues that the district court applied an incorrect standard to her motion for a new trial based on prosecutorial misconduct or, in the alternative, erred in finding that the prosecutorial misconduct was harmless. Candler also argues for the first time on appeal that co-defendant Fairly's counsel engaged in unethical conduct that deprived her of a fair trial.
 
 Prosecutorial Misconduct
 
 7
 4. To successfully move for a new trial based on prosecutorial misconduct, a defendant must show that it is "more probable than not that the [prosecutorial] misconduct materially affected the verdict." United States v. Hinton, 31 F.3d 817, 824 (9th Cir.1994). Reversal will only be necessary if the alleged prosecutorial misconduct, viewed in the context of the entire trial, actually deprived the defendant of a fair trial. See United States v. Yarbrough, 852 F.2d 1522, 1539 (9th Cir.1988). A reviewing court may defer to the trial court's view of the prosecutor's conduct. See United States v. Sanchez-Robles, 927 F.2d 1070, 1077 (9th Cir.1991).
 
 Fairly's previous convictions
 
 8
 5. Fairly failed to record a timely objection to evidence regarding his prior felony for the sale of a non-narcotic in lieu of an actual controlled substance ("second prior felony"). Therefore, we review for plain error.
 
 
 9
 6. Fairly refused to stipulate to either of his two previous offenses. As a result, the prosecution introduced Fairly's second prior felony to prove the felony-conviction element of his section 922(g)(1) felon in possession of a firearm charge (count three). Although evidence of Fairly's second prior felony was not admissible under Rule 404(b) of the Federal Rules of Evidence, it was admissible to show the felony-conviction element of count three. See Fed.R.Evid. 401. Therefore, the introduction of Fairly's second prior felony was not plain error. Parole status of Fairly's Father, Fairly's parole and prison status, Candler's prior bad acts.
 
 
 10
 7. Fairly timely objected at trial to testimony regarding the parole status of his father, therefore we review for harmless error. Fairly, however, failed to object at trial to testimony regarding his parole and prison status or Candler's prior bad acts, therefore we review these claims for plain error.
 
 
 11
 8. The record clearly shows that Officer Bell's testimony, where he mentioned the parole status of Fairly's father, was used to lay the foundation for the answering machine tape found at the Bullard apartment, which served to establish that Fairly resided at the Bullard apartment. Fairly offers no evidence that the government deliberately elicited information regarding the parole status of Fairly's father to imply Fairly's guilt simply through his association with a "law breaker." Therefore, admission of Officer Bell's testimony that Fairly's father was recently released from prison was not error.
 
 
 12
 9. Nothing in the record shows that evidence of Fairly's parole status was deliberately elicited by the prosecution to infer his guilt. Evidence of Fairly's parole status was needed to establish that Fairly failed to report residence changes to his parole officer as required. This fact supported the prosecution's argument that Fairly sought to hide his participation in a narcotics conspiracy. Testimony from Fairly's parole officers was also needed to show that Fairly, although unemployed, dressed in expensive clothing and jewelry. This testimony served to show that Fairly's lifestyle was consistent with narcotics trafficking. Lastly, testimony from Fairly's parole officers was needed to identify the men's clothing found in the Bullard apartment as belonging to Fairly. Therefore, the testimony regarding Fairly's parole status was more probative than prejudicial and as such, did not constitute plain error.
 
 
 13
 10. The record shows that Fairly's witnesses volunteered information about Fairly's prison history, without objection from Fairly's counsel. When the prosecution asked Fairly's mother and former spouse where Fairly was working and residing during the previous two years, they both mentioned that he was in jail. Moreover, Fairly's counsel invited this testimony on cross-examination by asking Officer Bell for more information regarding Fairly's prison history. Therefore, the testimony regarding Fairly's prison status was not plain error.
 
 
 14
 11. Fairly presents no argument to support his contention that the prosecution deliberately elicited testimony regarding Candler's prior bad acts to imply Fairly's guilt through his association with Candler. Accordingly, this issue is waived. See United States v. Tisor, 96 F.3d 370, 376 (9th Cir.1996). Fairly's marital status
 
 
 15
 12. Fairly objected at trial to the prosecution's alleged misrepresentation of his marital status, therefore we review for harmless error.
 
 
 16
 13. There is no evidence that the prosecution misrepresented Fairly's marital status in bad faith, thereby deliberately prejudicing him with the moral implication that he was living with Candler without having divorced his former wife, Hattie Cromer ("Cromer"). In fact, Fairly's own counsel referred to Cromer as Fairly's wife (not his ex-wife) and the mother of his two children. Moreover, the misrepresentation did not affect the outcome of the trial because it was a relatively unimportant description that was effectively clarified by Cromer's own testimony that she and Fairly were divorced. Therefore, the prosecution's misrepresentation of Fairly's marital status was not error.
 
 Fairly's parole violation
 
 17
 14. Fairly timely objected at trial to Officer Bell's unfinished response during the prosecution's redirect examination that the nature of Fairly's 1994 parole violation was "mur."[1] Therefore, we review for harmless error.
 
 
 18
 15. Defense counsel's "good behavior" line of questioning during his cross-examination of Officer Bell opened the door to the prosecution's question regarding the nature of Fairly's parole violation. Nonetheless, Officer Bell's unfinished response was more prejudicial than probative, therefore in error. Reversal, however, is not warranted because: (1) the jury did not hear the complete statement; (2) the district court immediately admonished the jury to disregard Officer Bell's unfinished response and, further instructed the jury that excluded or stricken testimony is not evidence that they may consider in their deliberations; and (3) the evidence supporting Fairly's conviction was overwhelming. Therefore, viewing the trial in its entirety, Officer Bell's testimony was more likely than not harmless error. See United States v. Aichele, 941 F.2d 761, 765 (9th Cir.1991). Integrity of Fairly's defense counsel
 
 
 19
 16. Fairly timely objected to the prosecution's statement allegedly impugning the integrity of Fairly's defense counsel. Therefore, we review for harmless error.
 
 
 20
 17. The prosecutor's question to Detective Torres: "Attorneys are expensive, aren't they?" was improper. It suggested that Fairly's counsel knowingly accepted drug proceeds as payment for his legal services. More importantly, it attacked Fairly's exercise of his right to counsel by implying to the jury that Fairly was guilty of the offenses charged merely because he was able to afford private counsel. Previously, we have held that a defendant's ability to pay for private counsel is not admissible to prove a defendant's guilt, therefore the prosecution's question was error. See Bruno v. Rushen, 721 F.2d 1193, 1194-95 (9th Cir.1983).
 
 
 21
 18. Reversal, however, is not warranted because: (1) the prosecution's question was brief, isolated, and not dispositive; (2) Detective Torres did not respond; (3) the prosecution established through other evidence that Fairly and Candler's living expenses far exceeded their documented income; and (4) the district court sustained defense counsel's objection and instructed the jury that statements made by lawyers were not evidence that they may consider in their deliberations. Accordingly, this constitutional error was harmless beyond a reasonable doubt. See United States v. Sanchez-Robles, 927 F.2d 1070, 1077 (9th Cir.1991).
 
 Prosecution's rebuttal argument
 
 22
 19. Fairly and Candler recorded timely objections to the prosecution's rebuttal arguments. Therefore, we review for harmless error.
 
 
 23
 20. We defer to the trial court's view of the prosecutor's conduct. See United States v. Sanchez-Robles, 927 F.2d 1070, 1077 (9th Cir.1991). Here, the district court concluded that the prosecution's misconduct did not materially affect the fairness of the defendants' trial. Moreover, the district court admonished the prosecutor in open court after every sustained objection. Thus, the jury understood why the prosecution's arguments were improper. The district court further instructed the jury that statements from lawyers were not evidence to be considered in reaching a verdict. Lastly, notwithstanding the prosecution's improper argument, the evidence supporting the conviction of both defendants was overwhelming. Therefore, the prosecution's misconduct during rebuttal was more probably than not harmless error. See United States v. Aichele, 941 F.2d 761, 765 (9th Cir.1991).
 
 
 24
 Prosecution's alleged materially false arguments
 
 
 25
 21. Fairly failed to object at trial to the prosecution's materially false arguments. Therefore, we review for plain error.
 
 
 26
 22. There is no evidence that the government knew, but argued to the contrary, that Fairly's father received a $60,000 insurance settlement for work-related injuries that purportedly served as Fairly's source of otherwise unexplained income. Fairly cites no authority to support his contention that the prosecution should have verified the existence of the alleged settlement by calling Fairly's father to the witness stand. At trial, the testimony of Fairly's mother that Fairly's living expenses were paid with settlement funds was effectively impeached on cross-examination with her testimony that: (1) she did not know the name of the insurance company involved; (2) she did not know the actual date of the alleged settlement; (3) she did not have any receipts of purchases made with alleged settlement money; and (4) she, nonetheless, qualified for food stamps. Also, defense counsel made the strategic decision not to verify the existence of the settlement by calling Fairly's father to the stand. Viewed in light of this evidence, the prosecution's inference that Fairly's father did not receive an insurance settlement was reasonable. As such, the prosecution's argument was permissible. See United States v. Sayetsitty, 107 F.3d 1405, 1409 (9th Cir.1997). Therefore, because the prosecution did not make materially false arguments, plain error did not occur.
 
 Lack of testimony from Fairly's father
 
 27
 23. Fairly objected at trial to the prosecution's argument that the failure of Fairly's father to testify as to the existence of the alleged insurance settlement meant that the settlement did not exist. Therefore, we review for harmless error.
 
 
 28
 24. The prosecution's argument that the alleged insurance settlement did not exist and, thus could not account for Fairly's income, was a reasonable inference drawn from defense counsel's decision not to call Fairly's father to the stand and from the questionable testimony of Fairly's mother regarding the existence of the alleged settlement. See United States v. Sayetsitty, 107 F.3d 1405, 1409 (9th Cir.1997). The prosecution's argument was permissible on rebuttal because it was in response to defense counsel's closing argument that he did not call Fairly's father to the stand, as promised in opening statement, because his testimony was not necessary and counsel did not want to waste the jury's time. Id. Moreover, the prosecution did not improperly argue that the defense had the burden to prove the existence of a settlement. Therefore, the prosecution's permissible inference drawn from the evidence at trial was not error.
 
 
 29
 Failure to produce evidence supporting defense
 
 
 30
 25. Fairly objected at trial to the prosecution's argument that the defense was behaving strangely. Therefore, we review for harmless error.
 
 
 31
 26. The prosecution's criticisms of defense counsels' strange behavior and the failure of Fairly's counsel to support his theory that Fairly's living expenses were paid from his father's insurance settlement were proper as criticisms of the defense's theories and tactics. See United States v. Sayetsitty, 107 F.3d 1405, 1409 (9th Cir.1997). Defense counsel invited such criticism when it stated in its "opening salvo" that the government, having failed to prove its case, now sought to appeal to the jury's passions. See United States v. Young, 470 U.S. 1, 12-13 (1985). Moreover, the district court instructed the jury that the government bore the burden of proving beyond a reasonable doubt all the elements of its case against the defendants. Therefore, no error occurred.
 
 Matters not in evidence
 
 32
 27. Defense counsel objected at trial to the prosecution's alleged arguments to matters not in evidence. Therefore, we review for harmless error.
 
 
 33
 28. The prosecution's argument regarding "bathrobes and toothbrushes" was permissible because it was an invited response to defense counsel's closing argument that if the defendants were living together, the government would have, but failed to produce many "momentos" from their apartment. See United States v. Sayetsitty, 107 F.3d 1405, 1409 (9th Cir.1997). The prosecution's "nightstand or locked vault" argument was a reasonable inference from evidence in the record that cash was seized from a bedroom nightstand in the defendants' apartment and that the defendants were living well beyond their means. Therefore, the prosecution's argument that the defendants were inconspicuously supporting themselves from drug proceeds fell within the "wide latitude" that counsel is allowed in closing argument. Id. This argument was permissible in rebuttal because it was a response to defense counsel's argument in closing that the government failed to present evidence of Fairly's alleged luxurious lifestyle. Therefore, no error occurred here.
 
 Prosecution's vouching
 
 34
 29. Defense counsel objected at trial to the prosecution's "fair case"[2] comment. Therefore, we review for harmless error. Defense counsel, however, did not object at trial to the prosecution's "find the truth" and "any reason to lie"[3] comments. Therefore, we review these claims for plain error.
 
 
 35
 30. The record shows that none of the prosecution's challenged comments constituted prosecutorial vouching. There is no evidence that the prosecution insinuated to the jury that it was aware of information not presented at trial that established the defendants' guilt. See United States v. Molina, 934 F.2d 1440, 1445 (9th Cir.1991). Nothing in the record suggests that the prosecution placed the full force of the government's prestige behind its case against the defendants or in support of Agent Tigh's veracity through personal assurances. See Molina, 934 F.2d at 1445. These comments were invited responses to defense counsels' closing arguments that the prosecution was appealing to the passions of the jury and that Agent Tigh attempted to frame Candler. Therefore, the prosecution's challenged statements did not constitute error, much less harmless or plain error.
 
 The cumulative effect
 
 36
 31. We consider the cumulative effect of three principal errors that occurred in this case: (1) Fairly's alleged parole violation, (2) the prosecution's attack on Fairly's exercise of his right to counsel to infer guilt; and (3) the prosecution's rebuttal argument.
 
 
 37
 32. The record shows that the evidence introduced at trial overwhelmingly supports the defendants' guilt beyond a reasonable doubt. Any prejudice caused by these three errors was ameliorated by the district court's instructions and admonitions to the jury to disregard stricken testimony and to remember that statements by lawyers were not evidence to be considered in reaching a verdict. The district court also explained to the jury why the prosecution's rebuttal arguments were improper. In sum, neither the individual, nor the cumulative effect of these three errors so prejudiced the defendants as to warrant a new trial. See United States v. Wallace, 848 F.2d 1464, 1476 (9th Cir.1988); United States v. Berry, 627 F.2d 193 (9th Cir.1980). Therefore, we hold that the district court did not abuse its discretion in denying the defendants' motion for a new trial.
 
 Exclusion of Candler's Taped Statements
 
 38
 33. We review a district court's evidentiary rulings during trial for an abuse of discretion. See Old Chief v. United States, 117 S.Ct. 644, 647 n. 1 (1997). A district court's refusal to allow impeachment evidence is also reviewed for an abuse of discretion. See United States v. Rowe, 92 F.3d 928, 933 (9th Cir.1996), cert. denied, 117 S.Ct. 785 (1997).
 
 
 39
 34. Candler's taped statement that Fairly was not living with her was not needed to impeach her in-court testimony on direct examination that they were living together because Candler had already impeached herself when she testified during cross-examination that she had lied on the tape. Thus, the jury heard both Candler's statement that she did not live with Fairly and her admission to lying about this statement. To allow the taped interview to be admitted into evidence to make the same point would have been cumulative and therefore inadmissible under Rule 403 of the Federal Rules of Evidence. See Fed.R.Evid. 403. Moreover, Candler's taped statement that the drugs found in the defendants' apartment belonged to an ex-boyfriend was inadmissible because it was a non-self-inculpatory statement relating to Fairly's or the alleged ex-boyfriend's guilt. See Williamson v. United States, 512 U.S. 594, 600-01 (1994). Therefore, we hold that the district court did not abuse its discretion in denying Fairly's request to play portions of the Candler interview tape for the jury during cross-examination.
 
 Candler's Motion for a New Trial
 
 40
 35. To successfully move for a new trial based on prosecutorial misconduct, a defendant must show that it is "more probable than not that the [prosecutorial] misconduct materially affected the verdict." United States v. Hinton, 31 F.3d 817, 824 (9th Cir.1994). A motion for a new trial based on prosecutorial misconduct may be denied where any prejudice caused by misconduct was effectively negated by the district court's admonishments to the jury and where evidence supporting the defendant's conviction is overwhelming. See United States v. Aichele, 941 F.2d 761, 765 (9th Cir.1991). When a district court does not make specific findings of fact or conclusions of law, the court of appeals may nevertheless uphold the result if there is a reasonable view of the record to support it. See United States v. Twine, 853 F.2d 676, 681 (9th Cir.1988).
 
 
 41
 36. The record shows that the district court reviewed Candler's motion for a new trial based on prosecutorial misconduct under the correct legal standard. The record strongly suggests that the district court determined that the character and nature of the evidence supporting Candler's guilt was "sufficient" to conclude that the fairness of her trial was not materially affected. See United States v. Hinton, 31 F.3d at 824; see also United States v. Aichele, 941 F.2d at 765. Therefore, upon reviewing the record, we hold that the district court applied the proper legal standard in reviewing Candler's motion for a new trial based on prosecutorial misconduct.
 
 
 42
 37. We also hold that the district court had the authority to review Candler's untimely motion because she joined in co-defendant Fairly's timely motion and did not raise any new issues.
 
 Alleged Attorney Misconduct
 
 43
 38. Where an attorney commits unethical acts that do not substantially prejudice a defendant, the proper sanction should be action by bar disciplinary authorities rather than a new trial. Cf. United States v. Lopez, 4 F.3d 1455, 1464 (9th Cir.1993) (holding that when there is no showing of substantial prejudice to the defendant, lesser sanctions than dismissal of indictment, such as holding the prosecutor in contempt or referral to the state bar for disciplinary proceedings, can be adequate to discipline and punish government attorneys who attempt to circumvent the standards of their profession).
 
 
 44
 39. Because Candler's forfeited claim concerning alleged acts of misconduct by Fairly's defense counsel is better suited for review by bar disciplinary authorities and because we need not make any findings of fact to conclude that Candler did not suffer substantial prejudice as a result of the alleged misconduct, we decline to take judicial notice of state court documents offered in support of this claim.
 
 
 45
 40. Candler did not raise allegations of attorney misconduct before the district court. Therefore, our review in determining whether Candler suffered substantial prejudice is for plain error.
 
 
 46
 41. We need not decide whether Fairly's counsel committed misconduct that constituted "error," that was "plain under the law." Even if the allegations of misconduct are assumed to be true, such misconduct did not affect Candler's "substantial rights." Therefore our review for plain error is ended. Here, the evidence supporting Candler's conviction is overwhelming. The district court instructed the jury that statements made by lawyers were not evidence for consideration in deliberation. This instruction neutralized Fairly's defense counsel's alleged unsworn testimony in his closing argument that Candler "lied" to him. Moreover, the prosecution's evidence that Candler lied on apartment and cellular phone applications, as well as to parole authorities and law enforcement officers, effectively impeached Candler's veracity and credibility as a witness. Therefore, we hold that because the alleged misconduct, even if true, did not affect the outcome of the district court proceedings, plain error did not occur. See United States v. Olano, 507 U.S. 725, 732 (1993).
 
 
 47
 AFFIRMED.
 
 
 
 **
 This disposition is appropriate for submission without oral argument
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The record shows that Officer Bell was referring to a state charge for attempted murder, which was the basis of Fairly's 1994 parole violation. Officer Bell, however, did not complete his response because he was interrupted by defense counsel's objection
 
 
 [2]
 In its rebuttal, the prosecution argued to the jury:
 The emotional fireworks have been on the part of the defense. We have tried to present a fair case based on the evidence.
 R.T. 845:17-18. Defense counsel objected on the grounds of prosecutorial misconduct. The district court sustained the objection. R.T. 845:8-9. Shortly thereafter, the prosecution said: "Find the truth which we have tried to present." R.T. 845:17-18. There was no objection.
 
 
 [3]
 The prosecution allegedly vouched for a defense witness, Agent Cindy Tigh, when it asked the jury: "Do you think [Cindy Tigh] had any reason to lie?" R.T. 830:22-23